### GRAY et al. v. TILLER.    (No. 3121.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 25, 1925. Rehearing Granted Jan. 7, 1926.)

#### On Motion for Rehearing.

1. **Vendor and purchaser** &⟶315(3)—**Evidence tending to show that indebtedness from sale of land had been entirely extinguished at time of settlement held not to support verdict for plaintiff.**

In vendor's suit on notes for balance due on sale of land evidence tending to show that indebtedness had been entirely extinguished at time of settlement between parties *held* not to sustain verdict and judgment for plaintiff.

2. **Compromise and settlement** &⟶17(2)—**Defendants not estopped to claim that indebtedness from sale of land was paid.**

In suit on notes and to foreclose vendor's lien on land sold defendants, defendants were not estopped by settlement and admission of sum due to claim payment, where plaintiff purchased notes with knowledge of conditions under which settlement was made, and defendants relied entirely on plaintiff in making settlement and ascertaining what amount was due.

Appeal from District Court, Panola County; Charles L. Brockfield, Judge.

Action by Mrs. Julia Tiller against West Gray and others. Judgment for plaintiff and for defendant Bid Gray and the other defendants appeal. Reversed and remanded.

H. N. Nelson and Long & Strong, all of Carthage, and Charles E. Carter, of Marshall, for appellants.

Woolworth & Duran and B. W. Baker, all of Carthage, for appellee.

HODGES, J. The appellee, Mrs. Tiller, filed this suit against the appellants, West Gray and wife and Bid Gray, to recover the balance due on three promissory notes and to foreclose a vendor's lien on a tract of land. H. N. Nelson was made a party defendant upon the ground that he was claiming an interest in a portion of the land. It was shown upon the trial that Bid Gray had transferred his interest to Mattie Gray, the wife of West Gray, and that she had assumed the payment of his obligations. He was awarded a judgment upon his plea of limitation. The remaining defendants pleaded payment and shortage in the amount of the land for which the notes were given.

In response to special issues, the jury found that in January, 1921, a balance of $1,200 was due upon the notes. They also found that the land had been sold by the acre, and that it was 23 acres short. A judgment was entered in conformity with the findings of the jury.

The testimony about which there is no dispute shows substantially the following facts: In December, 1910, Mrs. Iola Adams, the mother of Mrs. Tiller, sold a tract of land described as "206 acres" to West and Bid Gray. She took in part payment their four notes for the sum of $362 each, bearing interest at the rate of 10 per cent. per annum from date. The notes were payable one each year thereafter till all of them were paid. Mrs. Adams died sometime prior to 1920, leaving an estate and several children. In December, 1921, her children met for the purpose of dividing their mother's property. They found among the assets three of the notes above referred to. Being unable to determine just how much was still due, they had a conference with West Gray. According to the testimony offered by the appellee, after deducting all the credits claimed by Gray, there was a balance due of $1,200, and that sum was agreed upon by all the interested parties. The notes were then taken by Dr. C. C. Adams, one of the heirs, upon that basis, as a part of his interest in his mother's estate. Later he sold and assigned the notes for a valuable consideration to his sister, the appellee in this suit. The notes and lien had been extended from time to time, so that no question of limitation was presented. In 1922, after Mrs. Tiller had purchased the notes, another contract of extension was executed by Gray and wife, in which it was recited that $1,200 had been agreed on as the balance due in the family settlement. No further payments were made upon the notes, and no claim of payment in full was made until after the institution of this suit.

The appellants contend in this appeal that the evidence conclusively shows payment in 1920; that the extension of the debt there-

---

&⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

after made was without consideration. It is also contended that, since the land was the homestead of the Grays, it could not be incumbered for a debt they did not owe, or one which was not for the purchase money. It appears from the evidence that the first note bore all the credits entered by Mrs. Adams, and these amounted to something more than was necessary to satisfy the principal of that note. On each of the other notes had been indorsed, apparently in the handwriting of Mrs. Adams, the following: "Interest paid on this note to 12–12, 1918." Whether that payment was distinct from those indorsed on the first note is not shown. Gray and wife testified to other payments, evidenced by some receipts, which they made to Mrs. Adams. Those receipts, however, while in Mrs. Adams' handwriting, were not signed, and one of them did not state for what purpose the payment had been made or how it was to be applied. The record shows that West Gray owed Mrs. Adams other debts besides those evidenced by the land notes. In his testimony he was unable to point out any particular payments that he made at any specific time other than those evidenced by the indorsements on the note and the receipts.

The court had a right, if he saw proper, to discredit the testimony of Gray and his wife, and to conclude that the settlement made in 1921 was just and fair, and made at a time when the parties were prepared to ascertain the correct amount due. We cannot say, as a matter of law, that the court or the jury erred in their conclusions upon the facts of this case.

The judgment will therefore be affirmed.

We overrule the remaining assignments of error without discussion.

### On Motion for Rehearing.

Appellants insist in their motion for a rehearing that the judgment affirming this case should be set aside because the evidence conclusively shows that the debt upon which the suit was founded had been paid. After further investigation, we have concluded that there is merit in the motion. The land involved was conveyed on December 15, 1910. Four purchase-money notes were executed by Gray, each for the sum of $362, aggregating $1,448. They bore interest at the rate of 10 per cent. per annum from date. The jury found, in response to special issues, that the land had been sold by the acre, and there was a shortage of 23 acres. That shortage, multiplied by the price, $8 per acre, amounted to $184, which should be subtracted from the aggregate amount of the purchase-money notes, leaving $1,264, the net amount of the purchase money to be paid. The interest on this sum from date of notes to December 15, 1918, amounts to the sum of $1,011.20. This added to the principal makes an aggre-

gate of $2,275.25 due on the 15th day of December, 1918, in the absence of any payments. In the settlement between the parties the evidence showed that the first note had been surrendered to Gray. It was offered in evidence on the trial and showed payments aggregating $1,388.06, the last being on December 7, 1918. The interest on those payments, computed from the time each was made to December 15, 1918, amounted to $405.10. These figures may not be exactly correct, but are approximately so. That sum added to the payments credited on the first note amounted to $1,793.16. Subtracting the total amount of the credits, including the interest on the payments, from the aggregate amount of the principal and interest due on notes on December 15, 1918, we have a balance of $482.04 still due.

[1] The testimony showed that the settlement with the Grays occurred in December, 1921. Adding the interest on $482.04 for three years, from December 15, 1918, to date of settlement in December, 1921, we have $626.64. That shows that instead of owing $1,200 as claimed in the settlement, the Grays owed only $626.64. Gray and his wife testified to other sums paid, evidenced by receipts in the handwriting of Mrs. Adams, but unsigned, showing payments of something over $700 in addition to those indorsed upon the first note. There was nothing in the testimony offered by the appellee to dispute the correctness of those receipts. If the credits which the trial court could not ignore are supplemented with those about which there is no dispute, the indebtedness was entirely extinguished at the time of the settlement in December, 1921. It is true the court and the jury might discredit the testimony of Gray and wife as to other payments, but they could not disregard those credited on the note.

[2] The appellee pleads, however, that the appellants are estopped to claim that the indebtedness was paid. The estoppel is based upon the settlement made in December, 1921, and the admission of Gray and his wife there made that the sum of $1,200 was still due. If the appellee were a stranger to that settlement, or had been induced to purchase the notes without any knowledge of the conditions under which the settlement was made, a plea of estoppel might be available. But the evidence shows that Gray and his wife were ignorant negroes and were unable to read and write, and that they trusted entirely to the appellee and her brothers to make the settlement and ascertain what, if anything, was due. While the appellee did not make the calculations, her agents and representatives did, and she was present as an interested party. It is true witnesses for appellee stated that they gave Gray credit for all of the receipts he produced, but the evidence now conclusively shows that they did not give him credit for all the money he

had paid. The mistake was that of the appellee and the others jointly interested, and for that reason we do not think the plea of estoppel is available.

We do not feel inclined to reverse and render judgment in this case, but will reverse and remand in order that it may be more fully developed upon another trial.